IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **DEAN VILLANOVA,** : | |
|     **Plaintiff,** : | |
| : | |
|     **v.** : | Civ. No. 24-1170 |
| : | |
| **UNITED STATES OF AMERICA, et al.,** : | |
|     **Defendants.** : | |
| : | |

**Diamond, J.**                                                                                                   **September 17, 2024**

### MEMORANDUM OPINION

After his slip and fall at Independence National Historic Park, Plaintiff Dean Villanova proceeds against the United States of America under the Federal Tort Claims Act, and the City of Philadelphia and MainStreme Production Company, Inc. under Pennsylvania law. 28 U.S.C. § 1346; (Doc. No. 1.) I will grant the Government's Motion to Dismiss on immunity grounds. (Doc. No. 9); Fed. R. Civ. P. 12(b)(1). Because the Court thus is without jurisdiction to hear Plaintiff's federal law claim against the United States, it also lacks subject-matter jurisdiction over Villanova's pendant state law claims. Accordingly, I will dismiss the Complaint in its entirety.

### I.     BACKGROUND

I set out here the facts as alleged as well as those jurisdictional facts that are undisputed. (Docs. 1, 9, 13, 15.)

As alleged, on April 15, 2022, Villanova, a Pennsylvania resident, took part in a "Ghost Tour" led by MainStreme Productions (incorrectly identified in the Complaint as Ghost Tours of Philadelphia, LLC). (Compl. at 3-4.) The tour included the 400 block of Walnut Street, on the south side of Independence National Historic Park. (Doc. No. 10.) Villanova there "tripped,

1

stumbled, fell and suffered injuries" due to tree roots and dislodged or missing sidewalk bricks. (Compl. at 4.)  Villanova purportedly suffered a torn rotator cuff and other injuries.  (Id.)

The Park is administered and regulated by the National Park Service.  (Doc. No. 9 at 3.)  It is undisputed that the Park spans "approximately 55 acres on 20 city blocks within Philadelphia."  (Doc. No. 9, Ex. 1, ¶ 4.)  Visited by over four million people each year, the Park contains "more than 13 miles of sidewalks and paved trails . . . nearly all of which are stone or brick."  (Id. ¶ 4-5.)

With its 50 "direct labor" employees, the Service performs maintenance at its buildings, grounds, and walkways.  The maintenance department rarely operates at full staff, however, due to retirement and personnel turnover.  (Id. ¶ 6.) The Park employs two masons, who maintain the Park's stone and brickwork.  (Id.)  Although the Park's annual, non-labor maintenance budget is some $400,000, its annual non-labor maintenance costs regularly exceed $1,000,000, requiring the Park to reallocate funds when it can.  (Id.)  Employees are directed to report any maintenance hazards; the maintenance team seeks to respond timely to those reports and any hazards that visitors may report.  (Id. ¶ 9.)

On March 19, 2024, Villanova filed the instant Complaint.  (Compl.)  The United States and the City have moved to dismiss.  (Doc. No. 9.)  MainStreme Productions has filed a crossclaim against the United States and the City.  (Doc. No. 13.) The matter is fully briefed.  (Docs. No. 10, 13, 14, 16, 19, 26).

## II.     STANDARD OF REVIEW

Villanova brings an FTCA "negligence" claim against the Government, a state law negligence claim against the City, and state law negligence and breach of contract claims against MainStreme.  28 U.S.C. § 1346.

2

### A. Rule 12(b)(1)

A party may "move for dismissal of any claim over which the district court lacks subject-matter jurisdiction." Mayer v. Wallingford-Swarthmore Sch. Dist., 405 F. Supp. 3d 637, 640 (E.D. Pa. 2019) (citing Fed. R. Civ. P. 12(b)(1)). The Court is without subject-matter jurisdiction to hear a claim barred by immunity. See CNA v. U.S., 535 F.3d 132, 141 (3d Cir. 2008) ("The FTCA's waiver of sovereign immunity represents Congress's setting the federal courts' jurisdiction over tort lawsuits against the Government."); Bradley v. West Chester Univ., No. 15-2681, 2015 WL 8468563, at *2 (E.D. Pa. Dec. 9, 2015) ("Rule 12(b)(1) serves as the proper means by which to challenge the propriety of federal jurisdiction by reason of [sovereign immunity]." (citing Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 98-100 (1984)). Because the Government "attacks allegations underlying the assertion of jurisdiction in the complaint," its Motion is properly understood as a "factual challenge" to subject-matter jurisdiction. Hartig Drug Company Inc. v. Senju Pharmaceutical Co., 836 F.3d 261, 268 (3d Cir. 2012) Accordingly, I am "free to weigh the evidence and satisfy [myself] as to the existence of [my] power to hear the case." Mortensen v. First Fed. Sav. & Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977). I may also consider those documents and affidavits that include undisputed jurisdictional facts. See Const. Party of Pa. v. Aichele, 757 F.3d 347, 358 ("[A] court may weigh and consider evidence outside of the pleadings.").

### B. Federal Torts Claim Act

"Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." FDIC v. Meyer, 510 U.S. 471, 474 (1994). The FTCA provides a limited immunity waiver regarding some private tort claims arising from "the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment."

28 U.S.C. § 1346(b)(1). The Government continues to enjoy immunity from "claims based upon the exercise of a discretionary function on the part of an employee of the government." Baer v. United States, 722 F.3d 168, 172 (2013); 28 U.S.C. § 2680(a). The United States must show that the discretionary function exception applies. Merando v. United States, 517 F.3d 160, 164 (3d Cir. 2008).

In deciding whether the Government has met its burden, I must first determine whether the conduct that led to Villanova's injuries involved an "element of judgment or choice." Id. (quoting United States v. Gaubert, 499 U.S. 315, 322 (1991)). I must then decide whether the element of judgment or choice thus identified "is of the kind that the discretionary function was designed to shield." Id. (quoting Gaubert, 499 U.S. at 322-23).

### C. State Law Claims

I must dismiss Villanova's state law claims if I lack jurisdiction to hear them. See Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994) ("Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute."). "[S]ubject-matter jurisdiction, because it involves a court's power to hear a case, can never be forfeited or waived." Arbaugh v. Y&H Corp., 546 U.S. 500, 501 (2006) (quoting United States v. Cotton, 535 U.S. 625, 630 (2002)).

### III. DISCUSSION

Invoking sovereign immunity, the Government argues that the Service's judgments regarding the maintenance and inspection of its walkways are "the very types of scenarios protected by the discretionary function exception." (Doc. No. 9 at 12.) I agree. Moreover, because I must dismiss Villanova's federal law claim and no independent jurisdictional basis exists regarding Villanova's pendant state law claims, I must dismiss them as well.

**A. FTCA Claim**

The challenged conduct here is the National Park Service's purported failure to locate and repair the defective sidewalk on the 400 block of Walnut Street. (Compl. at 5.) I must first determine whether the Service's conduct "involved an element of judgment or choice." Merando, 517 F.3d at 168 (quoting Gaubert, 499 U.S. at 322). The discretionary function exception does not apply if a "federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow . . . [and] the employee has no rightful option but to adhere to that directive." Berkovitz ex rel. Berkovitz v. United States, 486 U.S. 531, 536 (1988).

In his four page brief, Villanova (who is represented by counsel) identifies no specific policy or statute binding Park Service employees in this way. To the contrary, various regulations, statutes, and internal policies explicitly give Park Service employees discretion on how best to maintain and inspect its parks. See, e.g., 54 U.S.C. § 100101(a) (the Director of the National Park Service "shall promote and regulate the use of the National Park System by means and measures that conform to the fundamental purpose of the System"); S.R.P. ex rel Abunabba v. U.S., 676 F.3d 329, 334-35 (3d Cir. 2012) ("To implement this statutory directive, the NPS has adopted various policies and internal operating procedures, including those related to public safety . . ."). Indeed, the Service's 2006 Park Management Policies, cited by both Parties, provide that "[t]he means by which public safety concerns are to be addressed *is left to the discretion of superintendents and other decisionmakers at the park level, who must work within the limits of funding and staffing.*" Nat'l Park Serv., Management Policies 2006, at 115 (emphasis added). These policies are "exactly the kind of guidance that the Third Circuit and other district courts within this Circuit have found 'involved an element of judgment or choice.'" Levitt v. United States, No. 20-5455, 2022 WL 523738, at *3 (E.D. Pa. Feb 22, 2022); see also id. (the discretionary

5

function exception applied where the plaintiff tripped on uneven sidewalk brick in Independence National Historic Park); Hite v. United States Dep't of the Interior, No. 23-3713, 2024 WL 2873466 (E.D. Pa. May 29, 2024) (same); Merando, 517 F.3d at 172 (the discretionary function exception applied where the Park Service failed to prune a hazardous tree in the Delaware Water Gap National Recreation Area).

Villanova argues that the outcome here should be different because "whether Defendant USA failed to exercise discretion in providing a safe environment for park visitors and employees under its 2006 Management Policies is at issue." (Doc. No. 10 at 3). With this argument Villanova seeks to distinguish the discretion to act and the discretion not to act—surely a distinction without a difference that would swallow the discretionary exception altogether. In any event, the FTCA explicitly protects government agencies and employees from any claim "based upon the exercise or performance or *the failure to exercise or perform* a discretionary function." 28 U.S.C. § 2680 (emphasis added). Accordingly, the United States has shown that the Service's maintenance and inspection practices "involved an element of judgment or choice" and thus satisfy the first prong of the discretionary function test.

I next consider "whether that judgment is of the kind that the discretionary function exception was designed to shield." Berkovitz, 486 U.S. at 536. I look to the "nature of the actions taken and whether they are susceptible to policy analysis." Gaubert, 499 U.S. at 324. As in Merando, the Park Service "had to consider how best to use its limited financial and human resources in a manner that balanced visitor safety with visitor enjoyment and conservation of the park." 517 F.3d at 172. The Service must use those resources to maintain more than 13 miles of sidewalk visited annually by over 4 million people. (Doc. No. 9 at 4.) The agency's allocations of these resources are "precisely the type of policy choice[s] that the discretionary function

6

exception prohibits [me] from second guessing." S.R.P., 676 F.3d at 337.

Because the Service's decisions regarding the maintenance and inspection of the Independence National Historic Park's sidewalks involve elements of judgment or choice and are susceptible to policy analysis, they fit within the discretionary function exception. Because sovereign immunity thus applies, I lack subject-matter jurisdiction to hear Plaintiff's claim against the United States.

### B. State Law Claims

Villanova's Complaint provides no jurisdictional basis for these claims. I nonetheless "have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party." Id.; see also Nesbit v. Gears Unlimited, Inc., 347 F.3d 72, 76-77 (3d Cir. 2003) ("[B]ecause subject-matter jurisdiction is non-waivable, courts have an independent obligation to satisfy themselves of jurisdiction if it is in doubt.").

For diversity jurisdiction to exist, no defendant may be a citizen of the same state as any plaintiff. See 28 U.S.C. § 1332(a)(1); Grand Union Supermarkets of the V.I., Inc. v. H.E. Lockhart Mgmt., Inc., 316 F.3d 408, 410 (3d Cir.2003) (citing Carden v. Arkoma Assocs., 494 U.S. 185, 187 (1990)). Villanova is a citizen of Pennsylvania; MainStreme Productions is incorporated in Pennsylvania; the City is obviously a Pennsylvania citizen. (Compl. at 1); (Doc. No. 13 at 2.) Accordingly, diversity jurisdiction does not exist.

Supplemental jurisdiction is the only other possible basis for the Court to hear Villanova's state law claims. See 28 U.S.C. § 1367(a). Supplemental jurisdiction cannot exist in the absence of jurisdiction to hear Villanova's FTCA claims. See United Mine Workers v. Gibbs, 383 U.S. 715, 726 (1966) ("Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well."); Storino v.

Borough of Point Pleasant Beach, 322 F.3d 293, 295 (3d Cir. 2003) ("Moreover, absent jurisdiction over the federal claim, the District Court did not have supplemental jurisdiction over the [plaintiff's] state law claims, and thus should have dismissed those claims as well.").

In these circumstances, I must dismiss Villanova's state law claims for want of subject-matter jurisdiction.

## IV.     CONCLUSION

Even though Villanova purportedly slipped and fell in a national park, there is no federal jurisdiction to hear this case. Accordingly, I will dismiss Villanova's federal claim with prejudice and his state law claims without prejudice.

An appropriate Order follows.

**AND IT IS SO ORDERED.**

*/s/ Paul. S. Diamond*
───────────────────────
Paul S. Diamond, J.